Howard E. Goldflhss, J.
The court is again called upon to make a determination of legislative intent by reason of an ápparent legislative ambiguity.
The defendant, Lorenzo Perez, is charged with violation of section 205.30 of the Penal Law in that he allegedly unlawfully resisted arrest by the complainant, a hospital special patrolman *89 employed at Lincoln Hospital. Defendant, after a preliminary hearing, moves to dismiss the charge of unlawfully resisting arrest (the other charges are not germane to this motion). The basis for his motion is that complainant is not empowered by law to make an authorized arrest of his person, and consequently, the unlawful resisting arrest charge must fall as legally insufficient.
Section 205.30 of the Penal Law states: “ A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer from effecting an authorized arrest of himself or another person.”
The People concede that the definition of “ peace officer ” as found in CPL 1.20 (subd. 33) includes a police officer (par. [a]), various categories of law enforcement personnel (pars, b-x as last relettered by L. 1974, ch. 282, § 1, effective May 1, 1974) but does not include a hospital special patrolman.
It is, of course, imperative to determine the exact status and duties of the hospital special patrolman. What is the source and what are the limits of his authority? Primarily, it must be determined if he has the authority to arrest.
Subdivision e of section 434ar-7.0 of the Administrative Code of the City of New York (added by L. 1970, ch. 117, § 1, effective March 24, 1970) empowers the Police Commissioner to appoint special officers in any agency within the jurisdictional confines of the City of New York. The section states: “The special patrolmen so appointed shall be subject to the orders of the commissioner * * * and shall during the term of their holding appointment possess all of the powers and discharge all of the duties of a peace officer while in the performance of their official duties.” (Italics supplied.)
The People now contend that this section must be read together with section 205.30 of the Penal Law in that any doubt as to peace officer status of the complainant herein which might arise from the reading of section 205.30 of the Penal Law, or of CPL 1.20 (subd. 33), is resolved by the wording of subdivision e of section 434a-7.0 of the Administrative Code.
The defendant, on the other hand, takes the position that in defining “ peace officer ” in CPL 1.20 (subd. 33), the omission of special patrolman reference is indicative of legislative intent irrespective of other legislation which infers otherwise. Further, it is his contention that a grant of power such as the authority to arrest giving the special patrolman in turn the right to charge resisting arrest, should not come by negative inference but rather by affirmative declaration.
*90 In order to attempt to discover the legislative intent, the history of subdivision e of section 434a~7.0 should be referred to. Effective March 24, 1970, it amended the Administrative Code of the City of New York and it was passed upon home rule consent. In a memorandum to the Legislature (N. Y. Legis. Ann., 1970, p. 61), Judge Richard Brown, now a colleague, but at the time, the legislative representative of the City of New York, cited the object of this statute as being a clarification of the power of the Police Commissioner to appoint city employees as special patrolmen. The amendment became necessary because the courts would not affirm this power under the previous section (§ 434a-7.0, subd. c). (See Matter of Kenler v. Murtagh, 24 Misc 2d 864; Matter of Del Giorno v. Police Dept. of City of N. Y., 33 A D 2d 665.) It can be assumed, therefore, that at the minimum, the Legislature had recognized by subdivision e a similarity between special patrolmen and peace officers.
In the legislative memorandum (N. Y. Legis. Ann., 1970, p. 62), the proposed powers of the special patrolmen were set forth: “ to issue summonses and take other necessary police action in the limited area of enforcement of the laws and rules and regulations within the jurisdiction of the agency wherein such employees are employed.”
The memorandum took the position that the Police Commissioner considered the proposed special patrolmen to be effective in their specialized and limited area of enforcement and that the passage of subdivision e would save the deployment of well over 5,000 members of the police department. It was further contended that the department’s available manpower was insufficient to cope with these additional assignments if the special patrolmen’s functions were invalidated. In responding by the passage of subdivision e the powers designated by the Legislature bear repetition. These special patrolmen shall “possess all the powers and discharge all the duties of a peace officer while in the performance of their official duties.”
The defendant contends that this language falls short of granting authority to arrest as it falls short of granting other peace officer authority, such as the power to possess firearms.
A court, in Velez v. Sugarman (75 Misc 2d 746), decided the latter issue by correctly interpreting subdivision e as one which would not authorize persons appointed under this section to possess guns. The court (p. 748) quoted from the memorandum in support of the section: “ ‘ This bill is not intended to and would not authorize such special patrolmen to possess firearms. A designation as a peace officer does not, under present law, exempt *91 such a person from Í he licensing provisions of the Penal Law.’ ’’
Unfortunately, ;his does not dispose of the problem we face herein, because the court, in Veles v. lugarman (supra, p. 749), while denying the right of possessing firearms to the plaintiffs, nevertheless recognize their unique status by adding: “The plaintiffs, at best, are limited peace officers who while on duty and while within the limited area of their jurisdiction * * * possess the power and duty to make arrests, and restrain and detain persons.”
We are then confronted with a legislative contradiction, namely, that in the Criminal Procedure Law sections referred to herein, the complainant is not specifically enumerated so as to be classified as a “peace officer” but other legislative authority permits him to act in that capacity. However, there is precedent for this wdth respect to hospital officers appointed pursuant to subdivision 4 of former section 34 of the Mental Hygiene Law the director is given the power to “ designate safety officers or other employees to act as special policeman, whose duty it shall be, under the orders of the director, to return to the institution persons lawfully retained * * Such safety officers and employees * * * shall possess all the powers of peace officers while performing duties in or arising out of the course of their employment. ’ ’
In addition, the Attorney-General of the State of New York (1971 Opns. Atty. Gen. 37) concluded that special patrolmen appointed pursuant to section 355 of the Education Law can validly exercise peace officer powers despite failure to be included within the Criminal Procedure Law enumeration. This was his specific interpretation of the language of that statute which authorized the State University trustees to appoint from time to time special policemen for the State University who shall be peace officers.
The defendant submits that in People v. Rivera (72 Misc 2d 985), a court has disposed of this very question by deciding that a special patrolman is not empowered to make an arrest by virtue of the omission of reference in section 205.30. This court agrees with a distinguished colleague who concluded that the special patrolmen ‘ ‘ are not members of the police force so as to qualify under subdivision 33 of CPL 1.20 as peace officers.” But a reading of this decision indicates that the People in the Rivera case did not present a contention similar to the one presented herein, namely that the language of the Administrative Code enabling statute gives the Police Commissioner power to appoint *92 — not police officers — but persons with peace officer status, powers and authority.
Once these powers are vested, they must be considered as meaningful, and they cannot be meaningful if the recipients of these powers are immediately rendered impotent. The circumstances of the instant case graphically illustrates how absurd any other conclusion could be. Special Patrolman Pachecko was called to the emergency room of Lincoln Hospital. Testimony at the hearing indicated that the defendant was loud, abusive and used obscene language. Upon admonishing the defendant and seeking to restrain him, the defendant allegedly punched the complainant and kicked him in the chest and upon being placed under arrest for such action, did resist by continually kicking the complainant until necessary force was used to restrain the defendant.
It is mandatory that we consider, under these facts, any logical interpretation of legislative intent other than giving the complainant the power to arrest, keeping in mind the site of this incident — the crowded emergency room of a city hospital. If we adopt defendant’s position, then the special patrolman is limited in this instance to verbal admonition, or at best, the issuance of a summons which, under the circumstances, would be ludicrous. Once we conclude that the complainant can seize, restrain or detain the defendant by authority of law, then logic demands that we conclude that this is, in effect, the power to ‘ arrest ’ ’ him, by every interpretation or meaning of the word. If this were not so, then the defendant would have an equal right to resist this restraint. It is inconceivable to this court that the Legislature, in its infinite wisdom, intended such a result. Such a finding would, in fact, legalize mayhem — letting the law smile on the winner. We would be resorting to the medieval practice of trial by battle. If an individual has a right to resist, he in effect has a right to counterattack because the line of demarcation between the two is imperceivable. The adoption and approval of this thinking would, in the opinion of this court, go a long way toward affirming Mr. Bumble in Dickens’ Oliver Twist wherein he says “ If the law supposes that * * * the law is a ass — a idiot. ’ ’
The legislative memorandum referred to herein requested the substitution of the special patrolmen so that they can be utilized in the policemen’s place. In passing subdivision e of section 434a-7.0 the Legislature acceded to that request. They were intended as alter egos of the regular police and were assigned to sensitive areas in agencies through the City of New York. They *93 were assigned for a purpose; the very same purpose that police are assigned anywhere; to keep the peace. They were not assigned as combatants in wrestling matches. If one is empowered, authorized and designated to keep the peace, he therefore must, of necessity, be in a different class than a citizen whose activity in that regard is limited to a citizen’s arrest wherein the validity of such arrest depends on the guilt of the defendant. (See Me Loughlin v. New York Edison Co., 252 N. Y. 202; People v. Cassone, 20 A D 2d 118, affd. 14 N Y 2d 798; People v. Horman, 22 N Y 2d 378, cert. den. 393 U. S. 1057.)
It is, therefore, concluded that the specific language of subdivision e of section 434a-7.0 sufficiently authorized and empowered the complainant in this case to arrest the defendant. That being so, the defendant may be charged with unlawful resisting if he so conducted himself in that fashion. The facts elicited at the hearing, as referred to herein, are legally sufficient to hold defendant for trial on the charge of resisting arrest (Penal Law, § 205.30) and the motion of the defendant to dismiss said charge is therefore denied.