John F. O’Mara, J.
The defendants aré charged in separate indictments with the crime of criminal possession of a controlled substance in the fifth degree. They have moved to suppress marijuana seized during a search of their college rooms on February 15, 1974, and to suppress statements made at the time of the search and subsequent thereto.
The testimony at the hearing revealed the following facts. Both defendants at the time of the incident were students at Rochester Institute of Technology (BIT) and they resided in separate rooms on the college campus. The defendant Gottshall wrote a letter to his girl friend which was intercepted by her mother and turned over to the State Police. The letter referred to the writer’s recent purchase and possession of one pound of marijuana and mentioned that a fellow student, Mark Donahue, was aware of this. The letter was received by George Rauber, a State Police Narcotics Investigator, late in the afternoon of February 13, 1974 and the following morning he telephoned the information to BIT security. That afternoon he went to BIT and showed the letter to John Ferlicca, Assistant Director of Protective Services.
After determining that Gottshall was the author of the letter, Bauber requested that Ferlicca get a statement from Donahue, who was a part-time employee of the security department, regarding the marijuana. A sworn affidavit was obtained by *5 Ferlicca and Rauber returned to RIT the same day to pick it up. Later in the day, Rauber called Ferlicca and indicated that his superior wanted a sworn deposition from Donahue before a Town Justice for the purpose of obtaining a search warrant and asked him to check on Donahue’s availability. Ferlicca determined that Donahue would be available the following day to go with Rauber to a Justice and so informed Rauber who stated that he would contact Ferlicca the next day. Rauber did not contact Ferlicca or anyone at RIT on the 15th, although Ferlicca did attempt, without success, to contact him. On the 15th, Rauber, who was at the time working on the street in an undercover capacity, was engaged in other matters in another part of the State.
In the latter part of the afternoon of Friday, February 15, Ferlicca and James Riley, the Director of Protective Services, went to the office of Dr. Fred Smith who was vice-president of student affairs at RIT, and who was responsible for security on the campus. They discussed the situation and their concern over the fact that a large number of people would be coming on the campus for a winter weekend, which was starting on Friday evening and would continue through Sunday. Dr. Smith gave written authorization to Ferlicca to conduct a search of Gottshall’s room. A search was made which resulted in the seizure of a quantity of marijuana; information was received from Gottshall that the defendant Boettner was the source of the marijuana and that he had recently received a large shipment. At the time of the search Gottshall appeared to be high on drugs in that he was jovial and laughing but he was not incoherent. Dr. Smith then gave verbal authorization by telephone for a search of Boettner's room and this search likewise resulted in the seizure of a quantity of marijuana. The rules of RIT concerning the search of students’ rooms required that a written request be made to Dr. Smith, and in neither ease was this done.
Following the seizure, Ferlicca again attempted to contact Rauber and when unsuccessful, contacted the Monroe County Sheriff’s office. On the next morning, a Deputy Sheriff together with Rauber, whom Ferlicca reached on the phone that morning, met at RIT. The marijuana was turned over to them. The defendants were placed under arrest and taken to the Monroe County Sheriff’s office where they were advised of their Miranda rights. Both defendants executed rights waiver forms and wrote out statements concerning their possession of the marijuana.
A search and seizure by a private citizen, which would be illegal if done by a government officer or agent, does not prevent *6 the use in a criminal prosecution of the evidence seized provided that the search and seizure is done without the knowledge or participation of any government official (People v. Horman, 22 NY 2d 378). If the search was directed by a police officer or he participated in the search then the evidence may not be used in a criminal prosecution (People v. Brown, 34 A D 2d 108; People v. Gleeson, 44 A D 2d 252).
It should first be noted that the present case must be distinguished from cases involving public schools or colleges whose, officials are generally deemed to be government agents. The protections of the Fourth Amendment clearly apply in such cases although the sufficiency of probable cause may be less than that required in nonschool searches (People v. Scott D., 34 N Y 2d 483). Here, BIT is a private college and it has few State or Federal contacts. Thus, there could be no basis on this record for finding that the actions of BIT officials must necessarily constitute “State action” for the purposes of the Fourth Amendment. (See Powe v. Miles, 407 F. 2d 73 and Grossner v. Trustees of Columbia Univ., 287 F. Supp. 535.)
In the present case, the State Police initially supplied information to BIT that a student might be in possession of marijuana. Thereafter on February 14, BIT security provided assistance by getting a statement from Donahue and checking on his availability to go with the officer before a Town Justice. But, the State Police had no knowledge of and did not participate, directly or indirectly, in the search conducted by BIT officials on the 15th. The State Police neither expressly nor impliedly requested that BIT conduct a search of defendants’ rooms. It is clear that the police were proceeding on their own in their efforts to obtain a search warrant. Under such circumstances, it cannot be said that the BIT officials who decided on their own to search defendants ’ rooms were acting as agents, either actual or implied, of law enforcement. The mere furnishing of information by police officers to a private citizen in the course of a criminal investigation, which information is later used by the private citizen to take independent action, will not require the exclusion in a subsequent criminal proceeding of evidence obtained through such independent action.
Nor can it be said that the present search was only one incident in a close and continuing relationship between BIT and local law enforcement officers. The record discloses that there had been no prior contacts of this nature between BIT and the police. BIT had never asked the police to come on campus to conduct drug investigations or to make arrests. The college had never *7 before participated with police in efforts to obtain search warrants for student dormitory rooms nor had it ever authorized a search of a student’s room at the request of the police. Therefore, there is no evidence of a general agency or an implied participation by way of a continuing relationship regarding this search and seizure. (See Note, Admissibility of Evidence Seized by Private University Officials in Violation of Fourth Amendment Standards, 56 Cornell L. Rev. 507.)
In the final analysis, BIT acted on its own, for its own reasons, and to further its own purposes. The presence of a large amount of marijuana on campus when a big winter weekend was to begin within hours was viewed as an emergency situation by BIT officials. Alarmed by the delay in law enforcement’s action, BIT proceeded to conduct the search to alleviate what they believed to be a danger to the college. The fact that the rules of the college regarding room searches were not complied with is of no consequence in determining the admissibility of the evidence for purposes of a criminal proceeding.
It is clear that searches under such circumstances as these must be carefully scrutinized in order to prevent circumvention of the constitutional right of citizens to be secure from illegal searches and seizures by government officers or agents. As was stated in Byars v. United States (273 U. S. 28, 32): “ the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods.”
After carefully examining the facts here, the court finds that the present search and seizure was conducted by college officials in a private capacity without government knowledge or participation and concludes that as such it is not subject to Fourth Amendment constraints. While it is true that a student does not lose his constitutional rights at the school house door or at the entrance to the college campus neither does he become cloaked with greater protection than any nonstudent who is the subject of a seizure of evidence by a private citizen. Therefore, defendants’ motions to suppress the marijuana are denied.
In addition, the court finds that the statements made by the defendants to college officials at the time of the searches were voluntarily made to persons who were neither public servants nor acting at the direction of or in co-operation with a public servant. Evidence that defendant Gottshall had taken a controlled substance prior to his conversations with college officials may, of course, be presented for the jury’s consideration. Further, the statements made to the police were voluntarily *8 made by the defendants after they were fully advised of their constitutional rights and had knowingly and intelligently waived those rights. The court holds that the foregoing findings were established by the People beyond a reasonable doubt and the motions to suppress the statements are denied.