*613 OPINION OF THE COURT
Michael C. Curci, J.
Upon the notice of motion and affidavits annexed, this motion is decided as follows.
Defendants joined together to move for a hearing suppressing physical evidence obtained by an unlawful search and seizure pursuant to CPL 710.30, contending substantially that one John Smoot is a special patrolman, and he not having probable cause to arrest the two defendants, the evidence should be suppressed.
The defense spends three pages at their affirmation predicating the thrust of their position upon the assumption that John Smoot is a "special patrolman.” The defense papers at no place show clearly that John Smoot is a special patrolman. True the first words at defense’s affirmation allude to that by stating "Special Patrolman John Smoot of Alexander’s Department Store observed a bulge in the jacket of one of the two defendants”. The defendants should have made their best showing at their affirmation of their contention that John Smoot was a special patrolman.
The single thrust argument set forth at defense affirmation that John Smoot was a special patrolman is the only reason set forth to allow defendant a hearing on a motion to suppress. For defendant did not allege John Smoot was working as a civilian directly and under the supervision of police. In such a case, such a civilian working with the police must show probable cause for his civilian arrests or searches. (People v Jones, 61 AD2d 264, and many other cases.) No, the defense has clearly committed itself to the allusion that John Smoot was a "special patrolman.” For if John Smoot was a civilian, and not under direct supervision of the police or a peace officer, no amount of titles affixed to his name, like "store guard,” or "security chief’ causes him to become a "special patrolman.” Therefore, defense simply calling John Smoot a special patrolman does not make him one. The misdemeanor complaint executed by Police Officer Gaynor calls him "one John Smoot.”
A store guard is a private person and, therefore, his or her search without probable cause may or may not give rise to other rights, including but not exclusive of at the civil side of the law, but is not necessarily constitutionally suppressible. The exclusionary rule only functions against police and peace *614 officers, or those working under their direct supervision. (United States v Bolden, 461 F2d 998; see CPL 60.45; People v Boettner, 80 Misc 2d 3; People v Frank, 52 Misc 2d 266; People v Horman, 22 NY2d 378.)
In point here, only special patrolmen licensed through section 434a-7.0 of the New York City Administrative Code may, in a proper case, be treated like peace officers and must give Miranda warnings and can arrest and search only upon probable cause. (Incidentally, special patrolmen can in a proper case charge resisting arrest.)
A special patrolman, when within the specialized limited nature of his duties, is, to quote from Velez v Sugarman (75 Misc 2d 746, 749) "at best, [a] limited peace [officer] who while on duty and while within the limited area of [his] jurisdiction * * * possesses] the power and duty to make arrests and restrain and detain persons. The intent of the Administrative Code section is clear”. This quote is indeed illuminating. It is taken out of context, for the eventual holding in that case was that although special patrolmen if passing certain criteria could be "at best * * * limited peace officers,” they could not carry guns.
We distinguish People v Rivera (72 Misc 2d 985) as follows: —that case settled that a special partolman was not a police officer; we agree.
Pertaining to the People v Bowers decision (77 Misc 2d 697, 699), the Appellate Term, Second Department, upheld Mr. Justice Canudo, then Judge Canudo, who held that a special patrolman’s search and seizure was subject to constitutional limitations and scrutiny.
Mr. Justice, then Judge Milonas, in People v Smith (82 Misc 2d 204) held a special patrolman is an agent of the government, and the constitutional prohibition against unlawful search is applicable.
Mr. Justice, then Judge Beldock, in May v Shaw (87 Misc 2d 808) held a special patrolman an "agent of the government” when in the performance of his official duties, giving rise to his granting a motion to suppress.
In point is Judge Goldfuss’ decision in People v Perez (79 Misc 2d 88) which held a special patrolman can be, practically, a peace officer, even though not so stated in CPL 1.20. It was said at that case since special patrolmen are accorded peace officer’s status, in subdivision (e) of section 434a-7.0 of *615 the Administrative Code, that the special patrolman had the power to arrest.
Merely to exhaust all of the cases of the subject, the following four cases, while not in point, do bear upon the subject as dicta. (Therefore, see People v Davis, 82 Misc 2d 41, for a case with an egregious set of facts where a special patrolman who acted like a peeping Tom was held accountable for his acts; therefore, see, also, People v Jackson, 72 Misc 2d 297; Rodriguez v MVAIC, 54 Misc 2d 361; Matter of Kenler v Murtagh, 24 Misc 2d 864.)
We are permitted to observe more than one statute to find definitions at the criminal law; CPL 1.20 is not sacrosanct. We note in passing CPL 1.20 (subd 34, par [d]) states "[a] sworn officer of an authorized police department”. Section 434a-7.0 of the Administrative Code empowers the police commissioner to appoint special officers under certain conditions. Subdivision e of section 434a-7.0 states "the special patrolmen so appointed shall be subject to the orders of the commissioner * * * and shall during the term of * * * appointment possess all the powers and discharge all the duties of a peace officer while in the performance of * * * official duties.” Subdivision b of section 434a-7.0 goes on to state "special patrolmen * * * shall possess the powers, perform the duties, and be subject to the orders, rules and regulations of the department in the same manner as regular patrolmen” and at subdivision c of section 434a-7.0, the Administrative Code goes on to state they "possess all the powers and discharge all of the duties of the force, applicable to regular patrolmen.”
Therefore, although a court may ascertain that a given agent was appointed special patrolman, this of itself is insufficient to warrant constitutional scrutiny unless the court also finds that that agent’s appointment was in force and also that that special patrolman was functioning within the specialized limited nature of his particular duties and within the performance of his particular duties at the subject date, time and place in question. Therefore, a special patrolman is, indeed, a very specialized "agent of the government,” and is not, therefore, on duty 24 hours a day, as are other peace officers, delineated in CPL 1.20. Certainly all police officers are also on duty 24 hours a day. Therefore, resisting arrest can be accomplished against the peace officer stated in CPL 1.20 and all police officers 24 hours a day. Similarly, constitutional protections and scrutiny will be given to all of the acts of the peace *616 officers stated to be such in CPL 1.20, as well as to the acts of all police officers 24 hours a day. Not so with a special patrolman.
None of the cases set forth herein set forth guidelines to specifically ascertain whether or not in the first instance the given agent is or is not a special patrolman. It is the purpose of this decision when read together with all the other decisions to settle these procedural guidelines. Therefore, the threshold question must be first decided. This appears to be often overlooked and is allowed to blend into the hearing. Worse, it can cause a disruption in the middle of a jury trial. A threshold requisite should first determine, before the constitutional hearing, and well before trial, whether or not the agent was or was not a special patrolman at that pertinent date, time and place.
Therefore, this court is ordering a hearing in order to determine first, whether or not John Smoot was a special patrolman on February 15, 1979. This hearing will be divided into two parts. The threshold question will be answered by first gaining determinations of the following three questions:
(1) Was John Smoot ever appointed a "special patrolman?”
(2) Was that appointment in force and effective on February 15, 1979 at 8:20 p.m.?
(3) If yes, was John Smoot functioning as a "special patrolman” within the specialized limited nature of his particular duties and was he within the performance of those official duties on February 15, 1979 at 8:20 p.m.?
The People will cause their witness John Smoot to testify since the People in the first instance have a duty to establish prima facie probable cause. The defense has the burden of going forward to show their contention of an illegal search by John Smoot whom they call a special patrolman. Therefore, in the event that after the first threshold part of the hearing delineated as Nos. 1, 2 and 3 above, it is established that John Smoot was a special patrolman on February 15, 1979 at 8:20 p.m., only then shall the hearing proceed forthwith to its second part. The second part may be a hearing to determine whether or not probable cause existed to arrest the defendants, and therefore, whether or not the search and seizure was illegal and all evidence should be suppressed.