OPINION OF THE COURT
Marvin E. Segal, J.
On March 2, 1985, the defendant, Richard Seaman, was *337 arrested and charged with criminal trespass in the third degree, resisting arrest, and criminal possession of a weapon in the fourth degree, in violation of Penal Law §§ 140.10, 205.30 and 265.01 (2), respectively.
On April 2, 1986, following a jury trial before this court, the defendant was acquitted of the charges of criminal trespass in the third degree and criminal possession of a weapon in the fourth degree. However, he was found guilty of resisting arrest.
The defendant now moves pursuant to CPL 330.30 (1) to set aside the guilty verdict on the ground that the People failed to sustain their burden of proof with respect to a material element of the crime of resisting arrest.
FACTS
The trial evidence, in pertinent part, indicates that on March 2, 1985, the defendant was observed inside the grounds of the barn area of Belmont Park, a racetrack located in Elmont, New York. He was in the presence of Shireen Chambers, a Belmont Park resident employee. The area is fenced and designed to exclude intruders, and is closed to the general public.
Officer William Shanahan, a Pinkerton security guard employed as a "Special Police Officer” by the New York Racing Association testified that on March 2, 1985, while patrolling Belmont Park in his patrol car with Officer Kenneth Ryan, a coemployee, he noticed two persons later identified as the defendant and Shireen Chambers. He requested the defendant to approach the patrol car, but defendant did not respond. Instead, Chambers came to the car, and upon request, produced her credentials. The defendant again ignored Shanahan’s request for him to approach the car. While Chambers cursed the officers, defendant fled the scene on his bicycle, with Chambers following afoot.
Shireen Chambers was apprehended shortly thereafter by Officer Shanahan and placed in the rear of the patrol car. The officers then pursued the defendant. While still in their patrol car, they observed the defendant running on Plainfield Avenue. They called the defendant by name, and asked him to stop. Instead, the defendant jumped from his bicycle and threw it at the patrol car. He then jumped on top of and over the patrol car and proceeded down a hill. Officer Shanahan was prevented from leaving the patrol car because the defen *338 dant’s bicycle was lodged against the driver’s door. Officer Ryan managed to catch the defendant by forcing him to kneel, and by embracing him in a half-nelson type of headlock. While further restraining the defendant by holding him by his jacket collar, Officer Ryan informed the defendant that he was under arrest for criminal trespass. The defendant continued to thrash about. Officer Ryan attempted to grab the defendant’s right arm in order to prevent the defendant from releasing himself. A struggle ensued for about one minute, during which time the defendant pulled away twice. Ryan experienced a great deal of pain in his right shoulder during his encounter with the defendant. Officer Shanahan was finally able to grab and handcuffed the defendant’s hands.
Once the defendant was secured, Officer Shanahan read him his Miranda warnings and placed him in the patrol car. The defendant was then taken to the dormitory office at Belmont, where a dagger was found inside his belt buckle. Thereafter, the defendant was placed in police custody.
LEGAL ANALYSIS
The issue which must be decided is whether the Pinkerton security guards employed by the New York Racing Association as special police officers are "peace officers” within the purview of CPL 1.20 and 2.10. The defendant contends that the People failed to sustain their burden of proof that Pinkerton guards, Kenneth Ryan and William Shanahan, were peace officers within the meaning of CPL 2.10.
The defendant herein was charged with resisting arrest. Penal Law § 205.30 states: "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.”
On November 19, 1985, the Honorable Robert Rosenthal conducted a combined Mapp-Huntley hearing. On March 6, 1986, Judge Rosenthal issued his decision, holding, inter alia, that there was probable cause to arrest the defendant. That decision is the law of the case. Hence, the arrest was authorized. (People v Stephens, 100 Misc 2d 267 [Dist Ct, Suffolk County 1979]; People v Lyke, 72 Misc 2d 1046 [Broome County Ct 1973].)
A person can only be guilty of resisting arrest if he prevents a police officer or peace officer from effecting an authorized arrest. Therefore, if, as the defendant contends, Officer Ryan *339 was not a peace officer within the meaning of CPL 2.10, then the defendant could not have, as a matter of law, resisted arrest.
CPL 1.20 (33) defines peace officer as a person listed in CPL 2.10 of this chapter. CPL 2.10 (29), in specifying those persons designated as peace officers, states, inter alia: "Special policemen for horse racing, appointed pursuant to the provisions of the pari-mutuel revenue law as set forth in chapter two hundred fifty-four of the laws of nineteen hundred forty, as amended; provided, however, that nothing in this subdivision shall be deemed to authorize such officer to carry, possess, repair or dispose of a firearm unless the appropriate license therefor has been issued pursuant to section 400.00 of the penal law”, shall have the powers of and shall be peace officers.
In addition thereto, Racing, Pari-Mutuel Wagering and Breeding Law § 215 also provides for special policemen for horse racing. This section states: "For the purpose of preserving order and preventing offenses against the laws prohibiting gambling, the trustees or directors of any corporation created under or subject to the provisions of this article are hereby authorized to appoint from time to time, five or more special policemen, and the same to remove at pleasure, who, when appointed, shall be peace officers with the same powers within and about such grounds as are set forth in section 2.20 of the criminal procedure law, whose duty, when appointed, shall be to preserve order within and around the grounds and racetracks of said corporation, to protect the property within said grounds, to eject or arrest all persons who shall be improperly within the grounds of such corporation or who shall be guilty of disorderly conduct, or who shall neglect or refuse to pay the fees or to observe the rules prescribed by said corporation; and it shall be the further duty of said policemen, when appointed, to prevent all violations of law with reference to pool-selling, bookmaking and other gambling, and to arrest any and all persons violating such provisions, and to convey such person or persons so arrested, with a statement of the cause of such arrest, before a court having jurisdiction of such offense, to be dealt with according to the law. The appointment of policemen in pursuance of this section shall not be deemed to supersede in any way on the grounds and racetrack of such corporation the authority of peace officers or police officers of the jurisdiction within which such grounds and racetrack are located.”
*340 Testimony was elicited at trial from Marvin L. Lieberman, the senior vice-president, general counsel and corporate secretary for the New York Racing Association, Inc., with respect to the employment of the aforesaid special police officers. The New York Racing Association is a privately held corporation formed in 1955. It owns and operates three racetracks in New York State, including Belmont Park. Mr. Lieberman testified that as per annual practice, at a regular meeting of the board of trustees of the New York Racing Association, Inc., on December 12, 1984, a motion was made, duly seconded and approved to adopt by resolution a bylaw: "that the Board of Trustees approve as special policemen for the 1985 calendar year the persons nominated by NYRA’s Director of Security on behalf of the Corporation, The New York Racing Security Service, Inc., a subsidiary of Pinkerton’s Inc. and the Thoroughbred Racing Protective Bureau”.
Officers Shanahan and Ryan appear on the list of those individuals nominated by the New York Racing Association’s director of security, and thereby duly designated as special policemen in 1985.
The defendant contends that the People failed to meet their burden of proof with regard to the status of Officers Ryan and Shanahan as peace officers, in that there was no proof that the officers successfuly completed a training program pursuant to CPL 2.30.
CPL 2.30 sets forth the training requirements for peace officers in the State of New York. It reads in pertinent part as follows:
"1. Every peace officer in the state of New York, appointed after the effective date of this article, who works a full complement of hours which constitutes full-time employment for the officer’s employer, must successfully complete a training program, a portion of which shall be prescribed by the municipal police training council and by his employer, the state or local agency, unit of local government, state or local commission, or public authority or private organization that employs him. The portion prescribed by the municipal police training council shall be comprised of subjects, and the hours each is to be taught, that shall be required of all types or classes of peace officers. The hours of instruction required by the municipal police training council shall not exceed thirty-five, unless a greater amount is either required by law or regulation, or is requested by the employer * * *
*341 "2. Upon the failure or refusal to comply with the requirements of subdivision one of this section, the commissioner of the division of criminal justice services shall apply to the supreme court for an order directed to the person responsible requiring compliance. Upon such application, the court may issue such order as may be just, and a failure to comply with the order of the court shall be a contempt of court and punishable as such.”
There are several cases involving the question of whether a particular defendant could have resisted arrest from or obstructed justice of a special patrolman in New York City. (See, Velez v Sugarman, 75 Misc 2d 746; People v Rivera, 72 Misc 2d 985; People v Smith, 82 Misc 2d 204; People v Perez, 79 Misc 2d 88.) In determining whether special patrolmen were peace officers within the meaning of CPL 1.20 and 2.30, the courts scrutinized the Criminal Procedure Law and the Administrative Code of the City of New York. However, none of the cases set forth herein discuss the training requirements detailed in CPL 2.30.
In People v Laurence (100 Misc 2d 612, 616), Judge Curci of the Criminal Court, City of New York, "set forth guidelines to specifically ascertain whether or not in the first instance the given agent is or is not a special patrolman”. Judge Curci, in deciding a motion for a hearing to suppress physical evidence, ordered a hearing to initially determine whether or not the arresting officer was a special patrolman on the date of the arrest. The threshold question as Judge Curci so aptly phrased it, was answered by first resolving the three issues cited below:
"(1) Was the [special patrolman] ever appointed a 'special patrolman?’
"(2) Was that appointment in force and effective on [the date and time of arrest?; and]
"(3) If yes, was [the officer in question] functioning as a 'special patrolman’ within the specialized limited nature of his particular duties and was he within the performance of those official duties on [the date and time of arrest]?” (100 Misc 2d, at p 616.)
The court went on to state that once the threshold part of the hearing delineated as numbers 1 through 3 above established that the officer in question was a special patrolman at such a given date and time, only then could the suppression hearing continue. (100 Misc 2d, at p 616.)
This court acknowledges that the People failed to prove that *342 Officer Ryan successfully completed a training program pursuant to CPL 2.30. Nevertheless, we hold that Officer Ryan was a special police officer exempt from the training requirements mandated by CPL 2.30, and therefore, a peace officer within the meaning of CPL 1.20 and 2.10, on March 2, 1985, at the time the defendant resisted arrest. Officer Ryan testified that he commenced employment with Pinkerton and the New York Racing Association 12 years ago. The effective date of CPL 2.30 is September 1, 1980 (L 1980, ch 843, § 238). CPL 2.30 (1) states that this section is applicable to every peace officer in the State of New York appointed after the effective date of this article. In addition thereto, McKinney’s Unconsolidated Laws of NY § 7917, which bears an effective date of 1926 (L 1926, ch 440, § 11, as amended by L 1971, ch 1097, § 138) is the derivative authority for Racing, Pari-Mutuel Wagering and Breeding Law § 215. Thus, Officer Ryan is exempt from such training requirements.
The defendant maintains that prior to his appointment as a special police officer by resolution in 1984, Officer Ryan was merely a Pinkerton security guard. The defendant further contends that by virtue of this annual appointment, a peace officer would be required to be recertified annually. This contention is erroneous. Martin Lieberman testified that this was an annual procedure, to wit, the adoption of a bylaw by resolution appointing special police officers for the following year. It is obvious to this court that the individuals nominated for employment would not be identical every year and, therefore, a new roster of employees would be included in the annual resolution. Furthermore, nowhere does CPL 2.30 state that every peace officer must be recertified each year. Rather, the statute is unequivocally clear in that it requires training certification be received within 12 months of appointment. (CPL 2.30.)
Since Officer Ryan’s status is the only status pertinent to the charge of resisting arrest, it is the determination of this court that Officer Ryan, a 12-year veteran, was a peace officer within the meaning of CPL 1.20 and 2.10 on the date and time of the defendant’s arrest.
Accordingly, for all the reasons stated above, defendant’s motion to set aside the guilty verdict is hereby denied.