THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVE R. JONES, Appellant.

Second Department, February 14, 1978

## APPEARANCES OF COUNSEL

*Matthew Muraskin* (*Howard B. Comet* and *Michael J. Obus* of counsel), for appellant.

*Denis Dillon, District Attorney (Marshall Trager* and *William C. Donnino* of counsel), for respondent.

## OPINION OF THE COURT

Hawkins, J.

The defendant appeals from a judgment of the County Court, Nassau County, rendered April 19, 1976, convicting him of grand larceny in the third degree, upon a jury verdict, and imposing sentence. The appeal also brings up for review the denial, after a hearing, of the defendant's motion to suppress certain evidence.

The judgment should be reversed, on the law, the motion to suppress granted and a new trial ordered.

On August 28, 1975, at approximately 2:00 p.m., two police officers who were on patrol at a shopping center located in Valley Stream, New York, entered Gimbels Department Store. They had been informed by one of the store's security personnel that the appellant, who was then in the men's clothing department, was being watched. After observing appellant for some 5 to 10 minutes, during which time nothing transpired, they left the store.

Thereafter, a security officer of the store saw the appellant take wire clippers and cut the chains running through the sleeves of some six leather coats. Appellant then placed the coats in a large plastic bag and proceeded to leave the store with the bag. The police officers, who had resumed patrol, were stopped by a security guard from Gimbels and informed that their assistance was needed because other security personnel were about to stop the subject, who was leaving Gimbels.

The officers entered the shopping mall, where they saw two security personnel from Gimbels and the appellant, who had been stopped and positioned against a wall. In front of the appellant was a plastic bag containing clothing. As they approached, Officer Kuhlkin spoke to the appellant, identifying himself as a police officer and displaying his shield. Kuhlkin placed his hand on the appellant's shoulder while the latter was being handcuffed by the store's security guards.

The police officers and security personnel walked the appellant into the store's security office. The officers then left the office and waited in the lobby immediately adjacent to that office for some 15 to 20 minutes, re-entered the office and then

transported the appellant to Nassau County's Fifth Police Precinct station house. Police Officer Conroy, the other officer involved, testified that as far as he was concerned, the appellant was not free to leave the store during the time he and Kuhlkin were outside the security office. Neither officer told the appellant that he was under arrest. The officers did not question the appellant in the security office; nor were they present when the security personnel questioned him. During that period appellant signed a statement which amounted to a full confession to the theft of the coats. He also signed photographs taken of the coats and other items. At no time was he advised of his *Miranda* rights.

After a pretrial hearing, the court denied the appellant's motion to suppress the statement and photos he had signed. The court ruled that the statement was voluntary and "that *Miranda* was inapplicable * * * [because] the function of the police * * * was not as police officers in their own right but rather [they] were assisting the store personnel." The appellant's statement was introduced at the trial and he was convicted.

Two questions are presented on this appeal: (1) was it proper not to have suppressed the statement and photos; and (2) if not proper, was their admission into evidence harmless error? We answer both these questions in the negative.

█ It is axiomatic that if a confession is obtained without the knowledge or participation of the police, it is fully admissible at a trial *(People v Horman,* 22 NY2d 378, cert den 393 US 1057). Even where there is police participation—if it is sufficiently limited—Fourth Amendment considerations do not come into play *(People v Goodman,* 51 AD2d 1008).

█ Here the officers had the appellant under surveillance at the request of the store's security personnel; their assistance was later requested when the appellant was seen removing the coats. After one of the police officers identified himself, they accompanied the appellant to the security office and waited while he was interrogated. One of the police officers testified that as far as he was concerned the appellant was not free to leave during this time. The participation of the police was of sufficient level to require that *Miranda* warnings be given. Thus, it was error not to have granted the appellant's motion to suppress.

█ We must now determine whether this error, which is constitutional in nature, is, nevertheless, harmless under the

standards enunciated in *People v Almestica* (42 NY2d 222). There the court held (pp 224-226) that "[e]ven constitutional error may be harmless when * * * it is clear, beyond a reasonable doubt, that * * * [it] did not contribute to * * * [the defendant's] conviction * * * So long as there is no reasonable possibility that admission of the evidence contributed to the conviction * * * the error * * * [is] harmless and the conviction should not be nullified as a matter of law."

The People argue that in the light of the eyewitness testimony, the conviction can be sustained even if the confession is deemed illegal. One of the store's security personnel testified that he saw the entire incident since he had had the appellant under observation. Another testified that he saw the appellant remove the coats from the rack and later saw him carrying a plastic bag from the store. The People contend that the appellant's confession merely corroborated that and other evidence. The essential question still remains: Is there a reasonable possibility that the admission of the appellant's statement into evidence contributed to his conviction? With the possible exception of a confession from the stand, nothing could have damned the appellant more than his written admission of guilt. Indeed, it could be said that the other trial evidence corroborated this statement and not the converse, as the People urge.

■ Under the circumstances present, we cannot say beyond a reasonable doubt that the error in admitting the appellant's statement did not contribute to his conviction.

Suozzi, J. (dissenting). I dissent and vote to affirm the judgment of conviction.

The majority and my fellow dissenter, Mr. Justice O'Connor, differ on the question of whether the participation of the police was of sufficient magnitude to require the giving of *Miranda* warnings to the defendant prior to his questioning by the security personnel of Gimbels.

I agree with the majority that the store's security personnel were required to give defendant the *Miranda* warnings prior to questioning and that the admission into evidence of defendant's statement, in the absence of those rights, was error of constitutional dimension. However, I do not agree with the majority's conclusion that the judgment of conviction must, therefore, be reversed. Rather, it is my view that this error was "harmless" under the facts presented pursuant to the

guidelines announced by the Court of Appeals in *People v Almestica* (42 NY2d 222). In *Almestica* the court stated (p 226) that constitutional error may be considered harmless "if there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction". Although recognizing the rule in *Almestica,* the majority holds that the constitutional error here was not harmless and bases that conclusion on the fact that the written admission of guilt was extremely damaging and the evidence adduced at the trial merely corroborated the written admission of guilt.

I cannot agree with this perspective of the record. In my view, the evidence of guilt, even apart from defendant's written admission of guilt, was overwhelming. One of the store's detectives observed the entire incident from a short distance. The store's security manager corroborated the store detective's testimony; the manager testified that he saw defendant remove the coats from the rack and carry a plastic bag from the store. Two of the store's security officers gave chase and apprehended defendant outside the store with the instruments of the crime and the fruits thereof, i.e., the wire clippers and the coats. At that point, prior to the arrival of the police, defendant stated to the store's security personnel: "All right, okay, your know, it is over." Under these circumstances, it is my view that there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction.

O'CONNOR, J. (dissenting). I dissent and vote to affirm the judgment of conviction.

Defendant's conviction of the crime of grand larceny in the third degree arose out of the theft of six leather coats from Gimbels Department Store in a Long Island shopping center. The facts, viewed most favorably to the People, are as follows:

On August 28, 1975, at about 2:00 P.M., two police officers on patrol in the shopping center entered Gimbels and were informed by one of the store's security personnel that a man, identified as the defendant, was being watched in the clothing department. After observing defendant for 5 to 10 minutes without incident, the two police officers left the store.

Thereafter, a store detective saw defendant, who was in front of a coat rack, take a wire clipper, cut the chains running through the sleeves of the coats, place them in a large green plastic bag and walk out of the store with the bag.

These observations were corroborated to a substantial degree by the store's security manager.

The two store security personnel, now accompanied by a woman store detective, followed defendant out of the store. They stopped him and the female store detective identified herself. Defendant took a step forward but the other store detective placed his hands on defendant's arm and back and "guided" him to the outside wall of Gimbels. At this point, defendant stated "okay, you know, it is over." During that period, the two police officers had been stopped by another store security officer and were advised that security personnel were about to stop a subject who was exiting the store.

By the time the police arrived at the scene, the store detectives had already identified themselves to defendant and had placed him against the wall. The defendant attempted to turn around, but one of the police officers put his hand on defendant's back and identified himself as a police officer.

The store detective who had observed the commission of the crime frisked defendant and handcuffed him. Defendant was then taken to the store's security office, accompanied by the store detectives, the store's security manager and the police officers. Once inside the office, the store detective removed a pair of wire clippers from defendant's pocket. The police officers were present at this time, but left after a few minutes without having engaged in any conversation with the defendant.

At this point, defendant was in the security office with the male store detective and the security manager. The store detective then typed a statement constituting a confession to the theft of the six coats and gave it to defendant, who signed it. The store detective also removed the coats from the plastic bag, hung them up and received an affirmative response from the defendant when asked if they were the coats that he had taken. The store detective also took photographs of the coats and defendant signed them on the reverse sides.

At the conclusion of the interrogation by the store detectives, the police officers, who had been in the lobby outside the closed door of the store security office, were called back into the office and then transported defendant to the station house.

In denying defendant's motion to suppress the inculpatory statement to the store detective and the photos that he had signed, the court held, *inter alia,* that defendant was not

entitled to *Miranda* warnings prior to being questioned by Gimbel's security personnel.

In reversing the judgment of conviction, the majority holds that the participation of the police in the case at bar was of sufficient magnitude to require the giving of *Miranda* warnings to the defendant prior to his questioning by the security personnel of Gimbels. I disagree with this conclusion.

The majority recognizes the well-established rule that a confession obtained without the knowledge or participation of the police, or with minimal police participation, is fully admissible at a trial *(People v Horman,* 22 NY2d 378, cert den 393 US 1057; see, also, *People v Goodman,* 51 AD2d 1008; *People v Boettner,* 80 Misc 2d 3, affd 50 AD2d 1074; *People v Esposito,* 37 NY2d 156; *People v Brown,* 34 AD2d 108).

In support of its conclusion that the store's security personnel were acting as agents of the police and that *Miranda* warnings had to be given to defendant before his interrogation by the security personnel, the majority relies on the following factors:

(1) The police had defendant under surveillance at the request of the store's security personnel;

(2) The police were requested to assist the store's security personnel when defendant removed the coats;

(3) The police identified themselves to defendant, accompanied him to the security office and waited while he was interrogated; and

(4) The police did not consider defendant free to leave during this period.

In my view the majority has ascribed to these factors an aura of significance which is not warranted on this record and has elevated form over substance to a disturbing degree.

The record indicates that although the police initially placed the defendant under surveillance, they terminated their surveillance after a few minutes when they failed to observe any criminal behavior. It was the store's security personnel who observed the commission of the crime, gave chase and apprehended defendant with the fruits of the crime in his possession. There is nothing in the record to support a finding that those security officers requested, or even needed, police assistance. Although the police did arrive on the scene, they did so at the request of another security officer who was not involved in the chase. They arrived at the scene after

defendant had been apprehended and was under the total control of the store's security officers. Defendant had already made a highly incriminating statement. Finally, by accompanying defendant to the store's security office and awaiting the outcome of the interrogation of defendant by the store's security personnel, the police were only engaging in normal practice under the circumstances. At that time the police were not sure whether the store would prosecute and whether defendant would have to be transported by them to the police precinct. Clearly, the totality of the police conduct here did not rise to such a level as to require the giving of *Miranda* warnings to defendant.

Several other matters are worthy of note. There is no indication whatsoever that there was a bad faith effort by the police to circumvent the mandates of *Miranda v Arizona* (384 US 436). Additionally, the store detectives were not acting "at the instigation of the police" and were not "supervised by them" (see *People v Esposito,* 37 NY2d 156, 160, *supra).*

Accordingly, the judgment of conviction should be affirmed.

DAMIANI, J. P., and RABIN, J., concur with HAWKINS, J.; SUOZZI and O'CONNOR, JJ., dissent and vote to affirm the judgment, with separate opinions.

Judgment of the County Court, Nassau County, rendered April 19, 1976, reversed, on the law, motion to suppress granted, and new trial ordered.