OPINION OF THE COURT
 

 Wachtler, J.
 

 The question on this appeal concerns the admissibility of a confession obtained without
 
 Miranda
 

 [1]
 

 warnings by private store detectives who took the defendant into custody, with assistance from county police officers, and questioned him in the store’s security office while the police officers waited outside. The County Court held the statement was admissible and, following a jury trial, the defendant was convicted of grand larceny in the third degree. But a majority at the Appellate Division reversed, suppressed the confession and ordered a new trial (61 AD2d 264). The prosecutor now appeals to our court.
 

 On the afternoon of August 28, 1975 two Nassau County police officers, who were assigned to patrol a Valley Stream shopping center in plainclothes, entered Gimbel’s Department Store. They were informed by the store’s security personnel that a man was then under observation in the men’s clothing department. Security officers in the men’s department pointed out the defendant to the police but indicated that they did not "have anything yet”. The police officers watched the defendant for 5 or 10 minutes without incident and then left the store.
 

 Soon after the defendant took a pair of wire clippers, cut the chains that ran through the sleeves of six leather coats, placed the coats in a plastic bag and proceeded to leave the store. This was observed by members of the store’s security staff who followed the defendant while one of the security guards went to find the police officers. The guard informed the police officers that store personnel were about to stop someone and that their assistance was needed.
 

 The defendant was stopped outside the store by security officers who identified themselves and took the coats. When the police arrived one of the security officers was holding the defendant against the wall attempting to handcuff him. As the defendant stepped away from the wall one of the police
 
 *532
 
 officers placed his hand on the defendant’s shoulder, showed the defendant his badge, identified himself as a police officer and told the defendant to stand there or keep his hands on the wall. The defendant was then handcuffed and brought back to the store’s security office by the police and the store personnel. The policemen left the defendant at the security office and waited outside the door while the store detectives questioned him. This apparently was the "normal procedure”.
 

 Inside the office the defendant was handcuffed to a desk, by one hand, and was asked to sign various items by the security officers. He was given a form confession with his name, address, a description of the stolen property and the date added and was asked to sign it if he understood it. He signed this form and another one by which he agreed not to enter the store for a three-year period. He also signed photographs of the stolen coats and the wire clippers. When this paper work was completed, the store detectives turned the defendant over to the police officers for criminal prosecution. It is conceded that neither the police nor the store detectives had previously informed the defendant that he had a right to remain silent or to consult with an attorney.
 

 In
 
 Miranda v Arizona
 
 (384 US 436, 444), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.” The court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” The People contend that in this case it was not necessary to advise the defendant of his rights or to employ other procedural safeguards because the defendant was taken into custody and questioned by private store detectives, and not by police officers.
 

 By statute, store detectives and other employees of retail stores are empowered to arrest or detain individuals suspected of shoplifting (General Business Law, § 218). Like police officers they are relieved of civil liability for false arrest if they can show reasonable grounds for the suspicion
 
 (Jacques v Sears, Roebuck & Co.,
 
 30 NY2d 466). Nevertheless in exercising this authority store employees are generally held to act as private individuals and not as police officers or State officials
 
 *533
 

 (People v Horman,
 
 22 NY2d 378; but see
 
 People v Smith,
 
 82 Misc 2d 204, holding that store detectives in New York City who are appointed by municipal officials as "special patrolmen” are governmental agents for Fourth Amendment purposes).
 

 It is settled that an unauthorized search or seizure by private individuals, including store detectives, does not render the evidence inadmissible at subsequent civil or criminal proceedings
 
 (Burdeau v McDowell,
 
 256 US 465;
 
 Sackler v Sackler,
 
 15 NY2d 40;
 
 People v Horman,
 
 22 NY2d 378,
 
 supra; People v Gleeson,
 
 36 NY2d 462). This is so, the cases hold, because the Fourth Amendment is meant to regulate government activity; the unauthorized act of a private person does not violate the constitutional limitations. That, at least, has been the rule when the individual has acted entirely on his own "without the participation or knowledge of any governmental official”
 
 (People v Horman, 22
 
 NY2d 378, 382,
 
 supra).
 

 The government, of course, cannot avoid constitutional restrictions by using a private individual as its agent (see, e.g.,
 
 People v Esposito,
 
 37 NY2d 156; CPL 710.20, subd 2), nor can it claim that only a private act is involved when government officers, subject to constitutional limitations, have participated in the act (see, e.g.,
 
 Lustig v United States,
 
 338 US 74). Under such circumstances the constitutional restrictions on governmental activity cannot be said to be inapplicable.
 

 In this case the People recognize that the store detectives did not act entirely on their own. The People claim however that there was no need to advise the defendant of his rights because the police participation was "minimal” or "peripheral”.
 

 In order to properly assess the significance of the police participation in this case it must be borne in mind that the purpose of the
 
 Miranda
 
 rule — the requirement that the defendant be advised of his rights before being questioned — is "to dispel the compulsion inherent in custodial surroundings”
 
 (Miranda v Arizona, supra,
 
 p 458; cf.
 
 Michigan v Mosely,
 
 423 US 96, 103-104). It is, of course, intended to regulate police conduct and here the People note that the defendant was "initially” taken into custody by the store detectives, and that the police did not take an active part in obtaining the confession or the defendant’s signature on the photographs. But the police were not merely anonymous observers. They actively participated in the arrest, one of them clearly identified
 
 *534
 
 himself to the defendant and both of them escorted the defendant to the place where he was interrogated while they awaited the outcome of the questioning. Although the store detectives who actually obtained the confession and other items may not have acted as police agents, the participation by the police was sufficient to create the type of custodial atmosphere which the
 
 Miranda
 
 rule was intended to alleviate.
 
 [2]
 
 Thus the confession and the signed photographs, obtained without advising the defendant of his rights, should be suppressed.
 

 The People argue, in the alternative, that the confession and the photographs, if erroneously admitted, were harmless beyond a reasonable doubt. They claim that even without the confession, the eyewitness testimony of the security officers presented "overwhelming and conclusive” evidence of the defendant’s guilt. Undoubtedly the People’s case was strong, but apparently not so strong that they felt they could do without the defendant’s confession at the trial. Indeed nothing could be more conclusive evidence of the defendant’s guilt than a signed confession. Significantly, during summation the prosecutor argued that • the confession corroborated the eyewitness accounts (cf.
 
 People v Dalton,
 
 38 NY2d 222, 226). And while deliberating the jury made an inquiry concerning the confession. Thus on the record it cannot be said that "there is no reasonable possibility that the error [in admitting the confession] might have contributed to defendant’s conviction”
 
 (People v Crimmins,
 
 36 NY2d 230, 237).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Fuchs-berg and Meyer concur with Judge Wachtler; Judge Jasen dissents and votes to reverse for the reasons stated in the dissenting opinion by Mr. Justice Frank D. O’Connor at the Appellate Division (61 AD2d 264, 269-272).
 

 Order affirmed.
 

 [1]
 

 .
 
 (Miranda v Arizona,
 
 384 US 436.)
 

 [2]
 

 . In light of this disposition there is no need to consider the defendant’s alternative arguments (1) that store security officers should be considered police officers when they exercise their special powers to
 
 interrogate
 
 those suspected of shoplifting (General Business Law, § 218) or (2) that the presence of the police at the scene would be sufficient State action even if they were only standing idly by.