OPINION OF THE COURT
Harold Fertig, J.
The Court of Appeals, on July 3, 1979, in People v Jones (47 NY2d 528), decided that a confession should be suppressed, after interrogation by a store detective, without advising the defendant of his constitutional rights. In that case the police were present at the scene prior to the arrest and immediately subsequent to the arrest, although they were not present in the room where the interrogation took place. The court specifically indicated that it did not consider defendant’s alternative argument that the store security officers should be considered police officers (or agents thereof) when they exercise their special powers to interrogate those suspected of shoplifting (General Business Law, § 218). In the case now before this court that question must be determined.
This decision is made at the conclusion of a hearing conducted to determine, first, whether the store detectives were persons acting under the direction of a public servant engaged in law enforcement activity, or in co-operation with such public servant pursuant to CPL 60.45 and, second, whether a statement made to those store detectives was voluntary or involuntary.
The testimony of the People’s witnesses indicated that the defendant entered Gimbels department store in Green Acres shopping center some time about 1:30 or 2:00 p.m. on March 2, 1979 with another person, and that after they entered the men’s department of that department store the "accomplice” removed the tags from a man’s jacket. The defendant then removed the jacket from the rack, brought it to the cashier and demanded a refund. This court is not determining those facts and that will be left for the jury in the subsequent trial. However, they are mentioned only to show the testimony before the court and to bring the factors which are before the court in focus. There is no question, however, that the defendant, who claims he returned the coat which he brought into the store as a result of a previous purchase, did receive a credit voucher from the cashier and subsequently went to another cashier in another department to claim the cash refund. Immediately after the defendant received his cash *835 refund he was arrested by the store detectives and brought to the store security office. Anthony Radi, one of the store detectives, filled out a District Court information (form 81) and a Nassau County Police form 85A. There is a supply of those police forms brought to the store security office by the police to be used by the store detectives when needed. Kenneth Olsen, the other witness for the People, was the supervisor of the security department at that store. The police were called after the paperwork was completed and arrived very shortly thereafter. During the preparation of the paperwork Mr. Olsen questioned the defendant and outlined to him what he claims he saw the defendant do. Form 85A, furnished to the store detectives by the Nassau County Police, has a provision on it for any confession or statement made by the defendant. Form 81 is the court information, usually prepared by the police department when a person is arrested.
Both security people identified themselves to the defendant at the time he was apprehended and showed him a gold badge about two inches in height which stated "Gimbel’s Security.” After outlining the facts as he knew them to be, Mr. Olsen asked the defendant some questions, at which time the defendant stated, "You’ve got me. You know what I did.” Mr. Olsen then prepared a written statement setting forth all the details and asked the defendant to read that statement. The defendant read it and was asked if he understood it, to which he replied that he did. Mr. Olsen then asked him if it was true, and the defendant stated, "It’s true but I won’t sign it.”
At no time was the defendant given any of the Miranda warnings or told of his rights. At the time the questioning was going on the defendant was handcuffed to the desk where he was sitting. He was asked certain questions concerning his needs. When he was asked if he had to go to the bathroom he replied that he did and was told he would have to wait for the security guard to obtain some additional help, at which time the defendant urinated on the floor.
There was additional testimony that the security guards at Gimbels department stores and at other participating department stores are instructed by the Nassau County Police Department in the technique of taking fingerprints. The purpose of the fingerprinting instructions is to permit the store security guards to fingerprint defendants when and if the police determine that a defendant would be released on an appearance ticket advising the defendant to appear in court *836 for arraignment. That fingerprinting is done in the presence of the police after they make that determination. Copies of the fingerprints are sent to the court, police department, and the F.B.I. Although store detective Olsen stated that he had prepared such fingerprints 12 to 18 times in the one and a half to two years since he has been instructed in that procedure, it was not done in the present case. The defendant claims that the store detectives were, at the very least, acting "in cooperation with” the police and under the color of governmental authority. He further argues that since no "Miranda Rights” were given to the defendant, the statement made by the defendant should be suppressed.
The People claim that the security officers were private individuals and not required to advise the defendant of his constitutional rights.
The first question to be determined is whether under the facts of this case, the security guards were either agents of the police or working in co-operation with the police, or were they acting as private persons.
It has been well settled that private individuals are not required to give a person detained by them his constitutional rights (People v Horman, 22 NY2d 378; Burdeau v McDowell, 256 US 465; People v Jones, 47 NY2d 528, supra; People v Gleeson, 36 NY2d 462; Miranda v Arizona, 384 US 436).
Generally, it has been found that private store detectives are private individuals and not public servants (People v Horman, supra; People v Frank, 52 Misc 2d 266; People v Jones, supra). In some special cases, where store detectives are special patrolmen licensed by the City of New York, appointed by the Police Commissioner and possessing special powers beyond those of private security guards hired by the store, the courts have found them to be agents of the government (People v Smith, 82 Misc 2d 204; People v Diaz, 85 Misc 2d 41).
CPL 60.45 (subd 2) provides, "A confession, admission or other statement is 'involuntarily made’ by a defendant when it is obtained from him: * * * (b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him * * * (ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States.”
In People v La Fauci (91 Misc 2d 980) decided prior to People v Jones (supra), the court, in this county, in a similar *837 matter determined that the statements made by the defendant were made to store detectives who were private individuals and such statements were made voluntarily, and differentiated the cases of People v Smith (supra) and People v Diaz (supra).
' It is principally because of a finding of the Court of Appeals in People v Jones (supra) that this court feels compelled to review the question again. In that case the police were on the premises of the store at the time of the arrest, assisted in the arrest, and stood by outside the store security office while the store detectives questioned the defendant. The court, holding that there was sufficient police involvement, suppressed the statements of the defendant.
CPL 60.45 provides in essence that an admission will be held to be involuntary and suppressed when it is obtained from a defendant by a public servant or a person acting in cooperation with him in violation of his constitutional rights.
The defendant stresses the words "in cooperation with” a law enforcement public official, but we can only consider them in context with the violation of his constitutional rights. In determining whether those rights have been violated we must look to the authorities to determine what circumstances and to what extent law enforcement officials’ participation warrant such a finding.
In the Jones case there was some police participation prior to and during the period of questioning. Does the fact that police forms, furnished by the police, are filled out by the store detectives, and the police training in fingerprinting sufficiently provide that degree of police participation which would bring it within the ambit of "cooperating with the police” in violation of defendant’s rights? There is no question that the defendant was in custody (handcuffed to a desk in the security office) and not given his Miranda rights.
In determining whether a person is in custody, the courts have determined that the test is not what the law enforcement officer determined but, rather, from the defendant’s point of view, what would a reasonable man, innocent of any crime, have thought had he been in the defendant’s position, deprived or restricted of his freedom of action under pressure of official authority (People v Yukl, 25 NY2d 585; People v Rodney P. [Anonymous], 21 NY2d 1).
Should we use a similar test in determining whether there is police co-operation or involvement? That is, should the determining factor be whether a reasonable man given the *838 same set of circumstances, have considered his interrogators to be police agents? Certainly, store detectives have an aura of police authority; they use the same indicia of power that public police use, including handcuffs, uniforms, badges and other insignia, and they make arrests and detain defendants (General Business Law, § 218; see, also, Search and Seizure Law Report, Vol 5, No. 1, Jan., 1978; Who’s Watching the Watchman? The Regulation, or Non-Regulation of America’s Largest Law Enforcement Institution, The Private Police, 5 Golden Gate L Rev 433, 434). In this case they also prepared forms provided by the police and were trained to take fingerprints. However, the authorities would appear to argue otherwise. It is the interrogator’s actual involvement with law enforcement officials that controls, rather than the aura of his involvement, as viewed by the person being questioned.
In "The Law and Private Police” by Kakalik and Wildhorn (1977), the authors state (p 231): "The public function theory could well be found applicable to private security activities. Many private security activities such as arresting shoplifters and investigating crimes, are quite similar to the functions usually performed by public police * * * Furthermore, as happened in Terry v. Adams (345 U.S. 461), allowing security activities to be free from constitutional restrictions might be used by the state to avoid actions called for by various Supreme Court decisions, such as Miranda v. Arizona, requiring state police to inform a suspect of his basic constitutional rights * * * In sum, constitutional restrictions are generally not applicable to purely private security activities; state action is required. But, depending on the circumstances, state action may well be found inherent in some private police activities.” However, the argument that a private detective working for a merchant is given specific powers to detain persons suspected of shoplifting and, therefore, is acting under color of State law has been rejected (see Warren v Cummings, 303 F Supp 803; Weyandt v Mason’s Stores, 279 F Supp 283). In Warren v Cummings (supra), the court finding that although the store detectives are given special privileges of detaining a shoplifter, stated (p 807), "There is not the slightest indication of state encouragement, participation or cooperation. Consequently, we see nothing in the nature of partnership with or agency of the state.”
It has also been held that while a private individual can make an arrest and not be subject to civil responsibility only *839 if the defendant is found guilty, a store detective need only prove that he had probable cause or sufficient grounds upon which to detain to be relieved of civil responsibility (Jacques v Sears, Roebuck & Co., 30 NY2d 466; Tota v Alexander’s, 63 Misc 2d 908; People v Williams, 53 Misc 2d 1086; Peole v Boettner, 80 Misc 2d 3, affd 50 AD2d 1074).
Nevertheless, as stated in "The Law and Private Police,” (p 328), "Unfortunately, wholesale application of constitutional standards to the activities of private police may have to await greater clarity or uniformity in licensing laws. Until then, constitutional restrictions are probably in order only when private police are licensed in a fashion that gives them more power than a normal citizen, or when a private policeman acts in conjunction with the public authorities.” (Emphasis supplied.)
The mere fact that the store security guards in this case were given forms by the police, and instructed to fingerprint suspects detained, was not of such involvement by police to make the detectives either "agents of’ or working "in cooperation with” the police. They were neither acting for the police nor doing anything pursuant to their request (see People v Frank, 52 Misc 2d 266) with regard to this particular defendant or his activities on the date in question. The police did not know of the detention or interrogation of this defendant until after the fact, when they were first called. Their involvement can be described, at best, as passive, only due to the preparation of official forms by the security guards.
The circumstances of People v Jones (47 NY2d 528, supra), were quite different, in that the police were on the scene and aware the interrogation was taking place and did nothing to stop it.
In State v Becich (13 Ore App 415, 419), the court reasoned that an illegal search by a private party can be subject to constitutional controls, if the private action is participated in by a police officer, and "if the extent of participation of the officer in the unlawful search was sufficient to make the police a party to the illegal search. The extent of the official involvement in the total enterprise is the crucial element. Raymond v. Superior Court, 19 Cal. App. 3d 321 * * *.” "The crux is not the citizen’s eagerness but the policeman’s involvement.” (Raymond v Superior Ct., supra, p 325.)
And in the case of Stapleton v Superior Ct. of Los Angeles County (70 Cal 2d 97, 101-102, 103), the court made certain *840 observations which shares, in essence, the views of People v Jones (supra). The court said, "To act 'under color’ of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents”, citing United States v Price (383 US 787). In analyzing a situation similar to that of People v Jones (supra) the court went on to say, " 'While no objection can be raised to the propriety of the arresting officer’s conduct in merely viewing the articles from the adjacent hallway, we cannot characterize him as a willing but innocent beneficiary in standing silently by while the appropriation was taking place’ (Moody v. United States, supra, 163 A2d 337, 340) * * * the police need not have requested or directed the search in order to be guilty of 'standing idly by’; knowledge of the illegal search coupled with a failure to protect the petitioner’s rights against such a search suffices.”
In the case before this court there is no showing of any police activity of any kind or any knowledge on the part of the police of this defendant’s interrogations or detention. The preparation of police forms cannot be interpreted to be such police participation, the extent of which, justifies a determination that the store security guards were acting in co-operation with the police, in violation of the defendant’s constitutional rights.
The defendant is left to his civil remedies and to the common-law determination of whether the statements were made voluntarily or involuntarily. There is no evidence of any coercion, either physical or psychological, and therefore, based upon the plethora of authority, the court must determine that no constitutional right of the defendant was denied him, nor was his statement involuntary.
Accordingly, the motion to suppress is denied.