■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NELSON WARREN, Also Known as JERRY KITT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Groh, J.), rendered November 19, 1981, convicting him of petit larceny, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of defendant's pretrial motion which sought suppression of oral statements. Judgment reversed, on the law, plea vacated, that branch of defendant's motion which sought suppression of oral statements granted, those statements are suppressed and the matter is remitted to Criminal Term for further proceedings. The testimony at the suppression hearing revealed that on October 28, 1980, defendant entered the Jamaica, Queens, branch of the National Bank of North America and attempted to withdraw funds from a nonexistent account. The police were summoned and defendant was placed under arrest. While still in the bank, arresting officer Detective Sabatino Fusco advised defendant of his *Miranda* rights, including the right to remain silent and the right to consult with an attorney. Defendant acknowledged that he understood his rights, but remained silent when asked if he was willing to answer questions without an attorney being present. Detective Fusco testified that from this he assumed that defendant did not wish to be questioned. Thereupon, Detective Fusco brought defendant to the precinct, which was across the street from the bank. Once at the precinct, Detective Fusco took defendant to a squad room to begin processing the arrest. Several minutes later, one Kernal Holland, a former New York City police officer and now chief of security for the National Bank of North America, entered the room. After identifying himself, Holland informed Detective Fusco that defendant was wanted in connection with a similar incident at another branch of the bank. According to Detective Fusco, Holland did not speak with the defendant in Fusco's presence. While the detective may have left Holland and the defendant in the room for a time, there were other police officers present. Holland also testified at the hearing. According to his version of the events, he identified himself and spoke briefly with Detective Fusco regarding the other charge. The defendant, who apparently had overheard the conversation then interjected, "you from the bank? * * * Will you tell these guys I have not did [*sic*] anything wrong?" At that point, Holland began to question the defendant. Although, according to Holland, Detective Fusco was in fact present during the questioning, Holland was uncertain as to whether Fusco overheard the questioning. Holland first asked defendant if he was Nelson Warren. Defendant replied that he was. According to Holland, the following exchange ensued: "I said 'did you open an account at Baisley Park branch?' He [defendant] said 'yes' * * * I asked him 'did you open it with a fifty dollar check?' and he acknowledged that he did * * * I then told him, I said 'the check was no good.' He said 'I didn't know it wasn't any good.' This is the fifty dollar check on the opening of the account. He said he didn't know it was no good. And I told him, I said 'the account has been closed for six months prior to the time this account was opened, that the savings account was opened.' In other words, the account that the check was drawn on had been closed six months prior to the time he deposited this check in savings account. Then I asked him about the fifty seven hundred dollar check that was deposited in the Rosedale branch and I said 'you know, where'd you get this check?' and he told me that this was in payment for a Mercedes — a female had given him this check in payment of a Mercedes, right, and he deposited this in the Rosedale branch, and then I said 'well, what about the second one that you deposited in the Rosedale branch?' and then he

tells me that 'well, the first check was no good and she gave me another check' and so after that I can't recall saying anything else to him because I figured he was just snowing me." Holland asserted that he made no promises or threats to the defendant. He also asserted that he did not ask the police officers to question defendant for him, nor did they prompt him to question defendant. He did, however, acknowledge that defendant may have been handcuffed to a chair at the time. After speaking with defendant, Holland stayed in the squad room another 15 or 20 minutes conversing with some of the detectives with whom he was acquainted. Following a hearing, Criminal Term denied the motion to suppress the conversation on the ground that Holland was acting in the interest of the bank, that he was not acting in co-operation with the police, and that there was no duty incumbent upon the police to prevent Holland from talking with the defendant. Thereafter, defendant entered a plea of guilty. We reverse. It is axiomatic that the constitutional protections against self incrimination do not apply to confessions elicited by private individuals (see *People v Horman,* 22 NY2d 378). The actions of private individuals, however, do become subject to scrutiny for violations of constitutional limitations when those individuals act as agents of the government or when government officials participate in the act (see CPL 60.45, subd 2, par [b]; *People v Esposito,* 37 NY2d 156). Thus, in *People v Jones* (47 NY2d 528) the Court of Appeals affirmed the suppression of a confession and certain physical evidence obtained from a defendant accused of shoplifting where the evidence was obtained by department store security officers who had been aided by the police in taking the defendant into custody and where the defendant had not been advised of his *Miranda* rights (*Miranda v Arizona,* 384 US 436). In *Jones* (*supra*), the store security officers who had observed defendant place a number of leather coats into a plastic bag, apprehended him outside the store and seized the coats. The police arrived as one of the security officers was attempting to handcuff the defendant. When the defendant tried to move away, "one of the police officers placed his hand on the defendant's shoulder, showed the defendant his badge, identified himself as a police officer and told the defendant to stand there or keep his hands on the wall" (47 NY2d 528, 531-532, *supra*). After being handcuffed, defendant was led back inside the store to the security office by both the police and the security officers. Once there, the police remained outside while the security officers questioned defendant. Inside the office, defendant, while handcuffed to a desk, signed a confession and photographs of the stolen goods. In finding that the police conduct was more than minimal or peripheral, the court noted (47 NY2d 528, 533-534, *supra*): "[T]he police were not merely anonymous observers. They actively participated in the arrest, one of them clearly identified himself to the defendant and both of them escorted the defendant to the place where he was interrogated while they awaited the outcome of the questioning. Although the store detectives who actually obtained the confession and other items may not have acted as police agents, the participation by the police was sufficient to create the type of custodial atmosphere which the *Miranda* rule was intended to alleviate". The level of police involvement in defendant's questioning in the case at bar was even greater than that in *Jones* (*supra*). Here not only had defendant been apprehended solely by the police, but the challenged questioning occurred while defendant was in the police precinct squad room, handcuffed to a chair and surrounded by detectives. Clearly the defendant's statement was obtained by an individual acting under the arresting officer's "direction or in cooperation with him" (CPL 60.45, subd 2, par [b]; *People v Jones, supra*). Our dissenting colleagues rely on *People v Bracy* (98 Misc 2d 346, affd *sub nom. People v De Pasquale,* 75 AD2d 751, affd 54 NY2d 693), which is distinguishable upon its facts. Firstly, the private individual who was

permitted to speak with the defendants in that case was a relative of one of the defendants. While he also happened to be a police officer, the paramount fact as found by Criminal Term was that the relative "was acting as a concerned brother-in-law attempting to help his wife's brother (and his friend) by giving them, in what his opinion was, the best advice he could offer" (98 Misc 2d 346, 351, *supra*). Secondly, in *Bracy* (*supra*), the brother-in-law did not actually elicit a statement from the defendants. He merely advised them that it would be in their best interests to tell the truth. The defendants then confessed to a police officer, but not before first being readvised of their *Miranda* rights (98 Misc 2d 346, 349, *supra*). In the instant case, Holland was obviously a stranger to defendant and was not present to give counsel to him. Moreover, we do not consider that defendant's plea to Holland to tell the police that he was innocent constituted an implicit waiver of defendant's right to remain silent. While we recognize that an explicit statement of waiver is not invariably necessary to support a finding that a defendant has waived his right to remain silent (see *North Carolina v Butler,* 441 US 369, 373), the People, nonetheless, bear a heavy burden of showing that a defendant waived that right (see *People v Jenkins,* 85 AD2d 265) and the court is obligated to " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights" (see *Johnson v Zerbst,* 304 US 458, 464, quoting from *Ohio Bell Tel. Co. v Commission,* 301 US 292, 307). Under the circumstances at bar, the defendant's conduct cannot be viewed as constituting an implicit waiver of his right to remain silent. This is not a case where a defendant, after having given no response upon being advised of his right to remain silent and to consult with an attorney, responds to a question which is put to him two to three minutes thereafter (see *People v Davis,* 55 NY2d 731). Titone, J. P., Lazer and Brown, JJ., concur.

Thompson, J., dissents, and votes to affirm the judgment appealed from, with a memorandum, in which Weinstein, J., concurs. Following the denial of defendant's motion to suppress oral statements, he entered a guilty plea to petit larceny. Defendant's prior criminal record consists of at least 12 arrests and 6 convictions, including convictions for attempted grand larceny in the second degree, grand larceny in the first degree, and two convictions for criminal possession of stolen property in the third degree. The majority concludes that the statements at issue should have been suppressed because they resulted from custodial interrogation after defendant invoked his right to remain silent upon receipt of the *Miranda* warnings. I do not agree for two reasons. The statements at issue were not obtained by a public servant engaged in law enforcement activity or by a person then acting under the direction of or in co-operation with a public servant (CPL 60.45, subd 2, par [b], cl [ii]), and the *Miranda* warnings are therefore not a factor to be considered in this case. In addition, even accepting the erroneous conclusion that police conduct was sufficiently involved herein to bring defendant's constitutional rights into the consideration of this matter, it is patently obvious that his conduct constituted a knowing and voluntary relinquishment of his *Miranda* rights. Only two witnesses testified at the *Huntley* hearing. Detective Sabatino Fusco stated that on October 28, 1980 at 3:45 P.M. he arrived at a branch of the National Bank of North America and was advised that defendant was attempting to withdraw $100 from a nonexistent account. Defendant was arrested and immediately given his *Miranda* rights. Although he acknowledged that he understood his right to remain silent, and that anything he said could be used against him, he failed to respond when he was asked if he was willing to answer questions without an attorney being present. Fusco assumed defendant did not want to be questioned, and he simply took him across the street to the precinct to process him. While defendant was being processed, Kernal Holland,

a security officer for the bank whom Fusco did not know, came in and introduced himself to Fusco. Holland noted that defendant was wanted on a separate fraud charge. Fusco did not ask Holland to interview or question defendant, and Holland did not request permission to speak to defendant. The other charge against defendant was one involving approximately $5,000 taken from another branch of the bank under similar circumstances. Holland did not have an opportunity to talk to defendant in Fusco's presence. When defendant was processed, the final charges against him covered the instant petit larceny and a charge of grand larceny for his prior wrongdoing. Kernal Holland, who was retired from the New York City Police Department, was the only other witness. He testified that upon receiving notification from the bank as to what had transpired, he went to the detective squad room in the precinct. There were six or seven people in the room in plain clothes, and he recognized some of those present as detectives. He introduced himself to Fusco. Defendant overheard his conversation with Fusco and asked "you from the bank? * * * Will you tell these guys I have not did [sic] anything wrong". Holland asked defendant if he was Nelson Warren and upon receipt of a positive response, the following ensued: "I said 'did you open an account in Baisley Park branch?' He said 'yes.' I said 'you opened it with fifty dollar check.' He said 'yes, that's right.' I said 'check is no good.' He said 'I didn't know it was no good.' I said 'the checking account that check was drawn on was closed for six months prior to that.' * * * Then I asked him about the fifty seven hundred dollar check that was deposited in the Rosedale Branch and I said 'you know, where'd you get this check?' and he told me that this was in payment for a Mercedes — a female had given him this check in payment of a Mercedes, right, and he deposited this in the Rosedale branch, and then I said 'well, what about the second one that you deposited in the Rosedale branch?' and then he tells me that 'well, the first check was no good and she gave me another check' and so after that I can't recall saying anything else to him because I figured he was just snowing me." Holland did not know if Fusco heard the conversation. He was unaware of Fusco's whereabouts while the conversation was going on. Defendant had been within earshot of Holland's initial conversation with Fusco. The others in the room were not involved in Holland's discussion with defendant. Nobody stopped Holland from talking with defendant, although nobody had requested that he ask defendant questions. After the conversation, Holland stayed 15 to 20 minutes to talk to people he knew in the squad room. Holland characterized what transpired as defendant wanting him to intercede with the police on defendant's behalf. As a result, defendant "opened the door and I talked to him". Under these circumstances, Criminal Term concluded: "From the credible evidence adduced at the hearing, the Court finds that Holland, the security investigator for the bank, was not acting in cooperation with the Police Department when he discussed with the defendant the various transactions the defendant had with the Bank of North America. It is clear that Holland was acting in the interest of the bank. (People v Adler, [50 NY2d 730]). Although he was in custody, the defendant appeared to feel free to address Holland when he heard he represented the bank. The fact that there were several other detectives present did not create a coercive atmosphere since they were all in civilian clothes and were not involved in this defendant's arrest. It was not incumbent on Detective Fusco to prevent Holland from talking to the defendant. There was no evidence presented that the defendant was subjected to any physical or mental pressure or psychologically coerced in any manner, by Holland, the security investigator. He was willing to discuss, even anxious, to explain to Holland that the failure of the checks to clear the bank was not due to bad faith on his part. Accordingly, the Court finds that Kernal Holland was at the police precinct in his private capacity as a security

investigator for the Bank of North America; that he was not an agent of the Police Department and was not acting in cooperation with the Police Department when he interrogated the defendant regarding certain checks which did not clear the banks on which they were drawn. The Court further finds that under the circumstances, Kernal Holland was not required to administer *Miranda* warnings to the defendant, prior to engaging in conversation with him. (CPL 60.45 (2) (a)). Defendant's motion to suppress statements made to Kernal Holland, security investigator, for the Bank of North America, is denied." I believe the motion to suppress was properly denied. Generally, in the absence of a finding that Holland was acting under the direction of or in co-operation with the police, the statements at issue would be considered the product of a conversation between private individuals, and the principles enumerated in the *Miranda* decision (*Miranda v Arizona,* 384 US 436) would not be a factor involved in evaluating the motion to suppress (CPL 60.45; *People v Lee,* 33 AD2d 397; see *People v Adler,* 50 NY2d 730). The record simply does not support a conclusion that Holland was acting under the direction of or in co-operation with the police. He was acting solely for his employer, the bank. Accordingly, Holland was not obligated to concern himself with whether defendant had invoked his *Miranda* rights. The defendant's reliance on *People v Jones* (47 NY2d 528) is misplaced. In *Jones* (*supra*) the police acted in concert with store detectives in arresting defendant, after which the police waited nearby while the store detectives obtained a confession without first affording the defendant his *Miranda* rights. The Court of Appeals noted that although the store detectives may not have acted as police agents, their participation was sufficient to create the type of custodial interrogation atmosphere which *Miranda* was intended to alleviate. In essence the court held that the police participation was sufficient to trigger *Miranda,* and the police could not cross back over the line to a pre-*Miranda* situation by letting the store detectives obtain a confession without affording *Miranda* warnings. The detectives may not have technically been considered agents of the police, but they certainly did the job the police would have otherwise done while the police waited passively for the outcome. In our case, defendant was advised of his *Miranda* rights and although he never affirmatively stated that he did not want to speak with the police in the absence of counsel, the police scrupulously honored his right to remain silent by not questioning him. There is no indication here that Holland was used to circumvent defendant's choice to remain silent. The record indicates Fusco never even bothered to listen to the conversation between Holland and defendant. It was defendant who spontaneously initiated the conversation in an attempt to give Holland an exculpatory version of the facts, with the hope that Holland could help him. The conversation between Holland and defendant should not be deemed the equivalent of custodial interrogation, particularly where there is no evidence the police were even privy to the conversation and in a position to prevent it. There was simply no police interrogation here. In *People v Bracy* (98 Misc 2d 346, affd *sub nom. People v De Pasquale,* 75 AD2d 751, affd 54 NY2d 693) defendants invoked their right to remain silent. The brother-in-law of one of the defendants, a policeman, was permitted to talk to defendants after being told the police had a good case against them. The brother-in-law convinced defendants to confess. Despite the police involvement in allowing the brother-in-law to speak to defendants after telling the brother-in-law they had a good case against defendants, the courts concluded that the defendants' right to remain silent had been scrupulously honored by the police. The police role here in the Holland-defendant conversation was less than that present in the brother-in-law-defendant conversation in *Bracy* (*supra*), and so it must be concluded that the police scrupulously honored defendant's right to remain silent in the

present situation. Even if it is concluded that a custodial interrogation took place herein, a view of a totality of the circumstances indicates that when defendant, a man with a lengthy criminal record, spontaneously sought to enlist Holland's aid by offering exculpatory explanations for his prior criminal deeds, he implicitly, knowingly and voluntarily waived his *Miranda* rights (see *North Carolina v Butler,* 441 US 369; *People v Davis,* 55 NY2d 731; *People v Rooney,* 82 AD2d 840; *People v Harris,* 79 AD2d 615; *People v Baez,* 79 AD2d 608). Defendant's other claim of error is without merit. Accordingly, I respectfully dissent and vote to affirm the judgment of conviction.