OPINION OF THE COURT
Eugene L. Nicandri, J.
Defendant, charged with arson in the third degree, seeks suppression of both certain physical evidence seized by a *989 volunteer fire investigator of the County Bureau of Fire, and certain statements made to a volunteer fire investigator.
A Mapp-Huntley hearing (Mapp v Ohio, 367 US 643 [1961]; People v Huntley, 15 NY2d 72 [1965]), conducted on January 27, 1987, January 30, 1987 and March 5, 1987, fix on the questions as to whether seizure of physical evidence at the scene of a fire by volunteer fire investigators is subject to Federal-State constitutional inquiry, and whether verbal statements by the defendant to the volunteer fire investigators, took place in a custodial environment subject to Miranda safeguards (Miranda v Arizona, 384 US 436 [1966]).
The People assert the seizure of physical evidence from the defendant’s residence was conducted with her consent. A heavy burden rests upon the People to sustain a consent search; that is, the People must prove by clear and convincing evidence that the defendant’s consent to the search was given freely and voluntarily.
A confession or admission is admissible at trial in this State only if its voluntariness is established by the People beyond a reasonable doubt.
RELEVANT FACTS
On September 19, 1985 at approximately 3:00 p.m. the West Potsdam Volunteer Fire Department responded to a fire call at the defendant’s residence in the Town of Potsdam. After suppressing the fire, the assistant chief in charge contacted the dispatcher in the St. Lawrence County Sheriff’s office and requested a fire investigator to assist in determining the cause and origin of the fire. Volunteer Fire Investigator Steven Green was dispatched to determine the cause and origin and contacted volunteer Fire Investigator Timothy Bill to assist him in that determination. Both fire investigators are members of the County Arson Strike Task Force. The fire investigators arrived at the fire scene in the early evening of September 19th. The fire scene was secured by the West Potsdam Volunteer Fire Department and remained secured by them until late in the afternoon of the following day. At the scene, the volunteer fire investigators talked with the fireman who first responded to the fire and those who participated in its suppression. They also talked to some neighbors and requested to talk to the defendant, who first reported the fire and reportedly the only adult present at the time the fire started.
When the investigators first saw the defendant she was *990 sitting in a pickup truck at the scene with a male companion. The male companion got out first. The fire investigators talked with him and after talking to him went to the pickup and talked to the defendant. The volunteer fire investigators asked her what she saw when she discovered the fire.
The volunteer fire investigators conversed with the defendant, and she described for the investigators how she first discovered the fire. As darkness was rapidly approaching they asked her to execute a release giving permission to the St. Lawrence County Bureau of Fire to "enter the premises described and to completely and fully investigate the cause and origin of the recent fire”. The defendant executed the release.
The next morning the volunteer fire investigators returned to the scene, which was still secured by the West Potsdam Volunteer Fire Department and conducted their investigation, including the taking of photographs, the videotaping of the scene and the collection of samples of physical evidence for testing.
Based upon their inspection of the fire scene and their observations, late in the afternoon of September 20th the volunteer fire investigators determined that the fire was not accidental in origin, delivered the samples to the St. Lawrence County Sheriff’s office for submission to the FBI laboratory and notified the St. Lawrence County Sheriff’s criminal investigators of their conclusion as to the cause and origin of the fire. On November 14, 1985 a written fire investigation report was completed and on February 13, 1986 copies of the investigative report with attachments and enclosures were delivered to the Chief of the West Potsdam Fire Department and criminal investigators with the St. Lawrence County Sheriff’s office who were also members of the St. Lawrence County Arson Strike Task Force.
CONTENTIONS
The prosecution contends that any action by the volunteer fire investigators is not subject to constitutional scrutiny. It is further contended that even if the action of the volunteer fire investigators was subject to constitutional scrutiny, that the result would still be a denial of the suppression of physical evidence and statements made by the defendant to the fire investigators.
Defendant, in support of her suppression application, con *991 tends that the seizure of the physical evidence by the volunteer fire investigators, and the unwarned (Miranda v Arizona, supra) statements made by her to the volunteer fire investigators, were made while she was under custodial restraint.
ARE VOLUNTEER FIRE INVESTIGATORS AGENTS OF THE SHERIFF’S OFFICE?
Generally, statements made to private individuals, or an unauthorized search or seizure by such persons, does not render that evidence inadmissible at a subsequent law enforcement proceeding (People v Rhodes, 107 AD2d 769 [1985]). Also, Miranda obligations apply to evidence gathered by private individuals acting as agents of the government or when government officials participate in the act (People v Jones, 47 NY2d 528).
Section 204-d of the General Municipal Law of the State of New York states: "The fire chief of any fire department * * * shall * * * to the extent reasonably possible determine or cause to be determined the cause of each fire or explosion which the fire department or company has been called to suppress.”
Section 204-c of the General Municipal Law of the State of New York (L 1979, ch 225) directs each county to develop a plan for arson investigation and states: "No plan shall be approved unless it provides for the coordination of fire, law enforcement and prosecutorial services.”
On November 9, 1981, the St. Lawrence County Legislature, by Resolution No. 207-81, in response to the State’s direction fo prepare an arson control plan, endorsed the plan prepared by the Office of Emergency Services, endorsed by the Arson Task Force and approved by the New York State Office of Fire Prevention and Control.
According to the adopted plan, the Arson Strike Task Force for the county is a pool of fire service, law enforcement and prosecutorial personnel having specialized training and expertise in arson. The adopted plan states: "Because of the nature of arson prosecution and the fact that an all out attack on arson is a relatively new concept in the county, but a necessary one, cooperation at all levels is necessary.”
The plan directs that where the fire investigator determines a fire to be suspicious or incendiary he will notify the fire chief and the appropriate police agency of the need for a criminal investigation. Under those circumstances, it may be *992 necessary for the fire chief to maintain control of the fire scene during the preliminary stages of the fire investigation and: "When a search is to be made of the scene by a member of the fire investigation team, a consent form should be obtained from the property owner to search and remove evidence from the scene. If the same cannot be reasonably obtained and the fire chief has no reason to stay on the scene, other than to keep it open for the investigation, a search warrant shall be obtained * * * The involvement of the volunteer fire investigators in the criminal investigation should be kept at a minimum and avoided if possible. It is their primary responsibility to conduct a cause and origin investigation.”
MIRANDA ANALYSIS
The Fifth Amendment privilege against compulsory self-incrimination, which the Miranda safeguards were designed to protect, has been very cautiously applied to situations not involving interrogation by official law enforcement personnel (People v Elliott, 131 Misc 2d 611, 615). The New York Court of Appeals has outlined the sufficiency of State-private involvement necessary to trigger the Miranda safeguards. In People v Ray (65 NY2d 282, 286), the status of the law in New York was digested: " 'The avowed purpose of Miranda was to secure the privilege against self-incrimination from encroachment by government actions. (Miranda v Arizona, 384 US 436, 445.) In the absence of active governmental participation in a private investigation, no Miranda warnings need be administered. Private conduct, however, may become so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections [People v Jones, 47 NY2d 528] * * * Relevant indicia of State involvement, which may transform private conduct into State action, include: a clear connection between the police and the private investigation (People v Horman, 22 NY2d 378, 380); completion of the private act at the instigation of the police (People v Esposito [37 NY2d 156, 160]) * * * and a private act undertaken on behalf of the police to further a police objective (People v Adler [50 NY2d 730, 737]).’ ” (People v Elliott, 131 Misc 2d 611, 617, supra.)
In the opinion of this court, the State mandates and the action of the St. Lawrence County Legislature do provide for coordinated private-public law enforcement involving the in *993 vestigation of suspicious fires. The volunteer fire investigation as to the cause and origin did accommodate police objectives. Thus, the court determines that the coordinated actions of the Arson Strike Task Force volunteer fire investigator accommodates and furthers police objectives and, therefore, it is necessary to apply Miranda standards to this arson investigation.
MAPP-PHYSICAL EVIDENCE SEIZURES
This court is satisfied by clear and convincing evidence that the defendant’s consent to the search was given freely and voluntarily. First, she voluntarily appeared at the scene. There were no police officers present. The interview of the defendant took place in public and she was not restrained in any manner. In fact, she left the scene after the interview and signing the release. The efforts of the volunteer fire investigators was clearly investigative in nature and design and in no manner accusatory. In fact, a determination as to the suspicious nature of the fire was not made until nearly 24 hours later (People v Gonzalez, 39 NY2d 122, 128; People v Carter, 30 NY2d 279; People v Kuhn, 33 NY2d 203).
MIRANDA APPLICATION
Having determined that the fire investigator’s investigation constitutes coordinated law enforcement which accommodated police objectives, raises the applicability of the Miranda standards to the interview of the defendant.
Miranda (supra) is clearly directed at custodial interrogation, that is, that of a case-by-case analysis where one is in custody, where he is deprived of his freedom of action in any significant way (384 US, at 444). Miranda was not meant to preclude police from carrying out their traditional investigatory function of investigating crime, including general, on the scene questioning as to the facts surrounding a crime (384 US, at 477, 481); and Miranda did not in any way bar voluntary statements of any kind (supra, at 478).
The questions put to the defendant on the evening of the fire were addressed to her as the one who initially telephoned the report of a fire at her residence. It is both logical and proper in doing a cause and origin analysis to ask what happened of the person who initially reports the incident. The limited questions as set forth in the transcript were routine questions and not interrogative.
*994 CONCLUSION
The totality of circumstances involving State legislative statutes and local government sponsorship dictates coordinated police-fire investigation of suspicious fires. This court concludes that the action by the volunteer fire investigators of the St. Lawrence County Arson Strike Task Force are subject to Federal-State constitutional scrutiny.
It is further determined by clear and convincing evidence, that the seizure of physical property at the scene of the fire by the volunteer fire investigators was not improper, but rested upon the defendant’s consent freely and voluntarily made. It is further determined that even had the defendant not so consented that the fire scene remained secure under the authority of the West Potsdam Fire Department until the volunteer fire investigators completed their cause and origin information. On that basis alone, the fire investigator would be entitled to gather and seize samples from the fire scene. It is further determined beyond a reasonable doubt, that the limited on-the-scene investigatory questions by the volunteer fire investigators and the defendant’s responses thereto were voluntarily made within the meaning of CPL 60.45 and were not made in a custodial setting or under circumstances requiring Miranda warnings.
Accordingly, the motions to suppress physical evidence and statements are hereby denied.