OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously affirmed.
The court properly denied suppression of evidence of the hospital investigator’s display of defendant’s photograph to the complainant, the day after defendant’s alleged unauthorized sexual touching of complainant as she lay in her hospital bed recovering from surgery. Fourth Amendment due process considerations apply only to government officials or their agents, not the investigative activities of private agencies or individuals (People v Jones, 47 NY2d 528, 533 [1979]; People v Martin, 240 AD2d 434, 434-435 [1997]; see also People v Horman, 22 NY2d 378, 381 [1968]). While private conduct may be “so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections” (People v Ray, 65 NY2d 282, 286 [1985]), the actions of a hospital employee, pursuing an internal investigation of another employee’s alleged misconduct, are not subject to the constitu *37 tional scrutiny appropriate to suppression hearings (e.g. People v Stephenson, 202 AD2d 280, 281 [1994]; see also Matter of Angel S., 302 AD2d 303 [2003]; People v Martin, 240 AD2d at 435). The unrebutted testimony of the hospital official and the detective involved in the police department’s investigation of the complaint established that the photo’s display occurred in the course of the hospital’s own internal investigation and without police knowledge, instigation, advice, supervision, or any other involvement so pervasive as to require constitutional scrutiny.
The claim that the lineup was unduly suggestive because the witness anticipated defendant’s participation in the lineup also lacks merit. As a practical matter, most persons asked to view a lineup, after having identified the perpetrator from a photograph, intuitively anticipate that the lineup will include that person. Such an “idea” in and of itself does not render a lineup impermissibly suggestive (e.g. People v Tapling, 159 AD2d 260, 261 [1990]). The rule has been applied where the witness “had [actual] knowledge prior to the lineup that the man whose photograph [he] had selected would be included in the lineup” (People v Wiredo, 138 AD2d 652, 653 [1988]), and where a police officer informed the witness that the suspect would be in the lineup (People v Anthony, 165 AD2d 876, 877 [1990]; People v Martinez, 151 AD2d 786, 787 [1989]; People v Hammond, 131 AD2d 876, 876-877 [1987]). There is no evidence that anyone suggested to the complainant that the person in the photo, much less a person suspected of committing the offense, would be in the lineup, and we infer no undue suggestiveness in this otherwise properly conducted lineup (People v Martinez, 151 AD2d at 787).
The complainant’s pretrial viewing of defendant while both were seated in the visitor’s gallery portion of the courtroom apparently resulted from the prosecutor’s belief that the complainant, who desired to view court proceedings, was entitled to do so and without regard for the risk of undue suggestiveness. While we cannot condone an indifference to the issue on the part of a perhaps inexperienced prosecutor, we do not find reversible error. A witness’s exposure to an accused at a court proceeding may technically implicate due process concerns (People v White, 73 NY2d 468, 474 [1989]), but because such encounters are not “police-arranged” they are generally exempt from constitutional scrutiny (e.g. People v Myers, 212 AD2d 1032, 1033 [1995] [whatever suggestiveness is implied by witness’s viewing of defendant at a parole revocation hearing *38 does not implicate due process considerations because it was not “police-arranged”]; People v MacKay, 98 AD2d 732 [1983] [“complainant’s in-court identification was not tainted by her attendance at defendant’s arraignment inasmuch as ‘the due process clause is violated only where the identification is the result of improper conduct by law enforcement officials’ ” (citations omitted)]). The herein encounter was not an arranged confrontation, but may be analogized to an inadvertent identification which occurs in a police station but which was not “police-arranged” or otherwise orchestrated to reinforce the witness’s ability to identify defendant while evading Fourth Amendment scrutiny (e.g. People v Dixon, 85 NY2d 218, 223 [1995] [no “police-arranged” identification where a witness, at the police station for another purpose, inadvertently views and identifies suspect]; People v Nimmons, 177 AD2d 444, 445 [1991] [same]). Here, the prosecutor flatly denied that in accommodating the complainant’s request to view court proceedings he had any intent to promote an unsupervised viewing of defendant, and as with the single-photo display, on the herein facts the event did not implicate due process concerns.
Defendant’s claim that the trial proof was legally insufficient and contrary to the weight of the evidence is unpreserved aside from the question of the admissibility of the identification evidence, and if admissible, the weight it should be afforded. A claim of legal insufficiency is interposed by a timely objection, with the requisite specificity regarding the deficiency perceived (CPL 470.05 [2]; People v Gray, 86 NY2d 10, 19 [1995]; People v Santos, 86 NY2d 869, 870 [1995]; People v Bynum, 70 NY2d 858, 859 [1987]). Here, defendant made only a general allegation of evidentiary insufficiency which preserves no claim for appellate review. In any event, viewed in the light most favorable to the People (People v Contes, 60 NY2d 620, 621 [1983]), the verdict was supported by legally sufficient evidence. As noted, the court did not err in admitting the identification evidence, and we are satisfied that the proof was legally sufficient to establish defendant’s unauthorized sexual touching of the complainant. Moreover, in the exercise of our factual review power it cannot be said that the verdict was contrary to the weight of the evidence (CPL 470.15 [5]; People v Bleakley, 69 NY2d 490, 495 [1987]). Insofar as the proof concerned matters of credibility and “the relative probative force of conflicting inferences that may be drawn from the testimony” (id. [internal quotation marks omitted]), such matters are primarily for the *39 finder of fact who saw and heard the witnesses (People v Cummings, 291 AD2d 454, 455 [2002]; People v Hernandez, 288 AD2d 489, 490 [2001]), which included the testimonies of the hospital investigator and the detective whose accounts were not impeached or contradicted at trial to any meaningful extent. Defendant’s own testimony “merely created factual issues which the [court], as the . . . arbiter of credibility, resolved against him” (People v Reynolds, 133 AD2d 499, 500 [1987]; People v Gertz, 189 Misc 2d 315, 316 [App Term, 9th & 10th Jud Dists 2001]), and whatever discrepancies may be discerned in complainant’s testimony did not render her testimony so manifestly untrue or so contrary to experience and common sense as to require that her account of the offense be rejected as unworthy of belief (People v Coico, 156 AD2d 578, 579 [1989]; People v Garafolo, 44 AD2d 86, 88 [1974]).
Pesce, EJ., Patterson and Rios, JJ., concur.